586 A.2d 383

Cara SCHWEITZER, Appellant,

v.

ROCKWELL INTERNATIONAL, and James W. Barson.

Superior Court of Pennsylvania.

Argued Aug. 23, 1990.

Filed Dec. 10, 1990.

Reargument Denied Feb. 19, 1991.

36

Daniel W. Ernsberger, Pittsburgh, for appellant.

John C. Unkovic, Pittsburgh, for Rockwell Intern., appellee.

Before DEL SOLE, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

This is an appeal from the summary judgment entered in favor of defendant Rockwell International (Rockwell) on July 11, 1989. We decide that the withdrawal of a complaint from the Pennsylvania Human Relations Commission within less than a year does not constitute exhaustion of a complainant's statutory remedy, but that the Pennsylvania Human Relations Act does not extinguish common law causes of action arising out of the same underlying acts which support a discrimination claim derived from the Act. Therefore we affirm in part and reverse in part.

In November of 1983, Schweitzer, an employee in the tax department of Rockwell, informed Rockwell that her supervisor James W. Barson touched her breasts, demanded a sexual relationship and made lewd comments about her body characteristics. Subsequently, Barson was discharged from employment with Rockwell in September of 1985 and Schweitzer was transferred to the insurance department.

Schweitzer filed a complaint against Rockwell with the Pennsylvania Human Relations Commission (the Commission) on September 16, 1985. In her complaint she alleged that Rockwell discriminated against her by subjecting her to sexual harassment by Barson based upon the above described acts and by transferring her to another department after she informed Rockwell of her intention to file a complaint with the Commission against Rockwell.

Based upon a letter from the Commission to Schweitzer dated May 20, 1986, it appears that Schweitzer asked the Commission for $10,000.00 in damages for mental anguish and $5,000.00 for medical expenses related to emotional distress. However, the Commission informed her that the

remedies she sought were not available to her under the Pennsylvania Human Relations Act (the Act), codified at 43 P.S. §§ 951–962.2. As a result, on June 2, 1986, Schweitzer requested that the Commission transfer her action to the Equal Employment Opportunity Commission (EEOC) because she felt that it was futile to pursue her claim with the Commission. The Commission transferred her action to the EEOC and thereafter closed her case by letter of August 11, 1986. On March 25, 1987, Schweitzer instituted the present action by filing a complaint in the Allegheny County Court of Common Pleas in which she requested compensatory and punitive damages. She later filed two amended complaints.

In her second amended complaint Schweitzer alleged in Count II that Rockwell violated the Human Relations Act and discriminated against her by creating and permitting an oppressive work environment not experienced by male employees, by failing to investigate her harassment complaint and by retaliating against her for filing a complaint with the Commission. In Count V, Schweitzer alleged that Rockwell was vicariously liable to her for the assault and intentional infliction of emotional distress perpetrated by Barson.

Rockwell filed a motion for summary judgment on April 18, 1989 alleging merely that Schweitzer "has failed to state any claim upon which relief could be granted against Rockwell." Rockwell's argument in support of this contention was wholly that the Act provided Schweitzer's exclusive remedy for her claims of sexual discrimination, assault and intentional infliction of emotional harm. Rockwell did not argue that Schweitzer failed to allege facts sufficient to support a cause of action for assault and intentional infliction of emotional distress. The court granted summary judgment on June 19, 1989. In its opinion of September 8, 1989, the court based its decision to grant summary judgment for both counts on the fact that Schweitzer had not exhausted her administrative remedies, which were exclusive, and thus she was precluded from recovering from

Rockwell on any basis in the Allegheny County Court of Common Pleas.

Barson did not move for summary judgment. Schweitzer's common law tort claims against Barson are still pending and are not a subject of this appeal.

On appeal Schweitzer asks us to consider whether the trial court erred in granting Rockwell's motion for summary judgment on the basis that Schweitzer failed to exhaust her administrative remedies with regard to her sexual discrimination claim, and on the basis that the Pennsylvania Human Relations Act and the Pennsylvania Workmen's Compensation Act are her exclusive remedies for assault and intentional infliction of emotional distress.

We agree with the trial court that Schweitzer has not exhausted her administrative remedies with regard to the claims arising exclusively under the act and thus the trial court correctly granted summary judgment over this portion of her case. However, we reject a construction of the Human Relations Act and the Workmen's Compensation Act that would bar Schweitzer's action for assault and intentional infliction of emotional distress.

In determining whether the trial court erred in granting or denying a motion for summary judgment, this court must determine whether the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue of any material fact, and that the moving party is entitled to judgment as a matter of law. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986); *Incollingo v. Maurer*, 394 Pa.Super. 352, 575 A.2d 939 (1990). Summary judgment may be entered only in those cases which are clear and free from doubt. *Id.* We shall not disturb the trial court's decision granting summary judgment unless there has been an error of law, or a manifest abuse of discretion. *Id.*

In general, a party seeking relief must exhaust available administrative remedies before he may obtain judicial review. *Ohio Casualty Group v. Argonaut Ins.*

40

*Co.*, 514 Pa. 430, 525 A.2d 1195 (1987). However, a complainant's right of action in the courts of the Commonwealth shall not be foreclosed. Section 962(c) of the Human Relations Act provides the prerequisites to filing a suit based upon a discrimination claim in the common pleas court:

> If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.

Schweitzer invoked the procedure of the Act when she filed her complaint with the Commission against Rockwell on September 16, 1985. Nine months later, before the Commission could take action to dismiss her complaint or enter into a conciliation agreement, Schweitzer requested that the Commission transfer her case to the EEOC. The Commission transferred her case to the EEOC pursuant to her request and the Commission closed her case. Schweitzer, without notice that her case had been dismissed or notice that the Commission had not entered into conciliation, as mandated by 43 P.S. § 962(c), instituted this action in the Allegheny County Court of Common Pleas.

This case is consistent with *Snyder v. Pa. Ass'n of School Retirees*, 389 Pa.Super. 261, 566 A.2d 1235 (1989). In that case, a panel of this court held that a civil rights claimant could seek redress in a judicial forum where the full one year period contemplated in § 962(c) of the Act had passed with respect to a separate "retaliation" allegation, this court held that its withdrawal by the claimant well before the expiration of the one year time limit in § 962(c) operated to deprive the trial court of jurisdiction. *Snyder*, 389 Pa.Super. at 274, 566 A.2d at 1241.

Schweitzer concedes in her brief that she failed to exhaust her administrative remedies; she suggests that the

rule of exhaustion of remedies is inappropriate here. Schweitzer argues that she did not ask the Commission to close her case but rather she made a conditional recommendation that the Commission transfer her case to the EEOC. Our Supreme Court has held that the closing of the Commission file at the claimant's request does not fit either of the prerequisites to filing suit in the common pleas courts of this Commonwealth. *Fye v. Central Transportation, Inc.*, 487 Pa. 137, 409 A.2d 2 (1979). We interpret Schweitzer's request to transfer her case to the EEOC as a request to close her case with the Commission.

Further, invocation of the procedures set forth in the Act entails more than the filing of a complaint; it includes the good faith use of the procedures provided for disposition of the complaint. *Lukus v. Westinghouse Elec. Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (1980). Schweitzer has not alleged facts to support the conclusion that she made a good faith attempt to exhaust her remedies under the Act. She did not give the Commission an opportunity to resolve her controversy in the relatively short time period allotted by the Act; instead, she requested that her case be transferred to the EEOC "rather than dismissing her claim for refusal to limit her demand." Letter from Schweitzer to the Commission, June 2, 1986. The Commission responded by letter of August 11, 1986 and notified Schweitzer that "in accordance with [your] request, this Commission is closing [your] case."

■ Schweitzer ignores the fact that it was she who chose to first file a complaint with the Commission, thereby invoking the procedure provided by the Act. She then changed her mind and chose to pursue her claims in the Allegheny County Court of Common Pleas in contravention of the requirements of the Act. We conclude that the trial court properly entered summary judgment in favor of Rockwell regarding Schweitzer's discrimination claims arising out of the Act because Schweitzer failed to exhaust the administrative remedies provided by the Act.

Next, Schweitzer contends that the Human Relations Act does not provide the exclusive remedy for her common law tort claims against Rockwell for assault and intentional infliction of emotional distress based upon the underlying acts that also constitute the harassment giving rise to her discrimination claims. We agree. The issue is whether a complainant who filed a claim for sexual discrimination with the Commission may also bring a common-law tort action against her employer in the common pleas court for assault and intentional infliction of emotional distress based upon the same underlying acts. Initially, to determine whether an alleged injury is subject to the exclusive remedies of a statute, or whether it is remediable in tort, we must examine the scope of the statute and its remedies to determine the intent of the legislature. *Kuney v. PMA Insurance Company*, 525 Pa. 171, 175–175, 578 A.2d 1285, 1286 (1990).

Section 952(b) of the Human Relations Act sets forth the legislative purpose of the Act:

It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their race, color, religious creed, ancestry, handicap or disability, use of guide dogs because of blindness or deafness of the user, use of support animals because of a physical handicap of the user or because the user is a handler or trainer of support or guide animals, age, sex, or national origin, and to safeguard their right to obtain and hold employment without such discrimination, to assure equal opportunities to all individuals and to safeguard their rights to public accommodation and to secure housing accommodation and commercial property regardless of race, color, religious creed, ancestry, sex, handicap or disability, use of guide animals because of blindness or deafness of the user or national origin.

43 P.S. § 952(b).

Section 955 of the Act describes what actions constitute unlawful discriminatory practices. It prohibits individuals, employers, employment agencies, housing providers, lend-

ing institutions and labor organizations from discriminating against various classes of individuals. Because we are concerned only with unlawful discrimination perpetrated by an employer, we will address only the prohibitions of § 955 with regard to employers. Under § 955, it is an unlawful discriminatory practice:

> For any employer because of race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability to refuse to hire, employ or otherwise discriminate against such individuals with respect ... to the conditions or privileges of employment[,].... [to] elicit any information or make or keep a record ... of the race, color, religious creed, ancestry, age, sex, national origin or past handicap or disability of any applicant for employment[,].... [to] print or publish ... any notice or advertisement relating to employment ... indicating any preference, limitation or discrimination based upon [the above mentioned characteristics,].... [to] deny or limit ... employment because of race, color, religious creed, ancestry, age, sex, national origin, non-job related handicap or disability or place of birth[,].... [to] substantially confine or limit recruitment or hiring of individuals, with intent to circumvent the spirit and purpose of the act[,].... [to] deny employment because of a prior handicap[,] ... [to] discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act[,].... [or to] aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice.

43 P.S. § 955. None of the above mentioned unlawful discriminatory acts by an employer includes molestation that constitutes assault and intentional infliction of emotional harm.

In furtherance of the purpose of the Act, the legislature created the Pennsylvania Human Relations Commission, 43

P.S. § 956. The Legislature intended that the Commission would be an expert in the field of unlawful discrimination. *See Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989). However, the Commission, like all administrative agencies, can exercise only those powers which have been conferred upon it by the Legislature. *Pennsylvania Human Relations Comm'n v. Zamantakis*, 478 Pa. 454, 387 A.2d 70 (1978). The Act provides specific remedies for the victim of discrimination. These remedies are:

such affirmative action, including, but not limited to, reimbursement of certifiable travel expenses in matters involving the complaint, not to exceed fifty dollars ($50), compensation for loss of work in matters involving the complaint, not to exceed two hundred dollars ($200), hiring, reinstatement or upgrading of employes, with or without back pay....

43 P.S. § 959(f). The Legislature gave the courts the authority to order, in addition to the "affirmative action" carried out by the Commission, "any other legal or equitable relief as the court deems proper." *Zamantakis, supra.* The Legislature chose to give the common pleas court the power to award these types of damages instead of the Commission. *Id.* The Zamantakis court held that the Commission has no authority, let alone exclusive authority, to award damages for mental anguish and humiliation arising as a result of acts that also constitute unlawful discrimination.

██ Underscoring the limited power of the Commission, 43 P.S. § 962(b), the exclusivity provision of the Act in pertinent part provides:

[a]s to *acts declared unlawful by section five [section 955] of this act* the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same *grievance* of the complainant concerned.

(Emphasis added). We have determined that the acts of assault and intentional infliction of emotional distress are

not acts declared unlawful by the Human Relations Act. Read as a whole, § 962(b) forbids any civil actions based upon the same grievance declared unlawful by § 955 of the Act where the Act has been invoked. In the above quoted passage, "grievance" refers to the phrase "acts declared unlawful by section five of this act," and can in no way be construed to mean the "underlying acts" themselves. We conclude that nothing in the intent of the Legislature or in the language of the Act forbids independent legal actions based upon the underlying acts, in this case assault and intentional infliction of emotional distress.

A comparison of the interests that the Act is designed to protect with the interests protected by the common law causes of action also leads us to the conclusion that the statutory remedy does not redress these common law interests. In *Shaffer v. National Can Corporation*, 565 F.Supp. 909 (E.D.Pa.1983), Shaffer charged her former employer with employment discrimination in the form of sexual harassment. Shaffer filed complaints with the EEOC and the Commission. The Commission dismissed her complaint, while the EEOC sent her notice of her right to sue. Shaffer then filed a complaint in the district court alleging a violation of Title VII of the Civil Rights Act of 1964 as well as state claims for wrongful discharge and intentional infliction of emotional distress. Her former employer argued that Shaffer's causes of action for wrongful discharge and intentional infliction of emotional distress were superseded by the Pennsylvania Human Relations Act and that Shaffer's complaint failed to state a claim for intentional infliction of emotional distress. The district court compared the interests involved and determined that the Act is not necessarily a complainant's exclusive remedy:

Shaffer's claim for intentional infliction of emotional distress presents a different situation. Unlike the claim for wrongful discharge, the interests sought to be protected by the PHRA and this tort are fundamentally different. The PHRA effectuates the state's interests in eradicating targeted forms of discrimination. Remedies thereunder

are tailored to further this interest and include injunctions, reinstatement and awards of back pay (citation omitted). The tort of intentional infliction of emotional distress vindicates the personal interest of freedom from intentionally imposed mental anguish. Damages, both compensatory and punitive, provide the remedy for this wrong. *To the extent that the interests protected and remedies afforded differ, the PHRA could not have been intended and should not be held to supplant a cause of action for intentional infliction of emotional distress.* *Shaffer*, 565 F.Supp. at 914. (Emphasis added). The interests that Schweitzer seeks to protect by her claims for assault and intentional infliction of emotional distress are fundamentally different from the interests she seeks to protect in her claim for sexual discrimination under the Human Relations Act, as are the remedies sought. Further, preventing Schweitzer from bringing her common law claims in the common pleas court actually frustrates the purpose of the statute, the prevention and remediation of discrimination. *See Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977). The legislature did not intend to erect a procedural obstacle to recovery when it provided the Act as an individual's exclusive remedy regarding discrimination as defined in the statute itself. *Id.*

Rockwell relies on *Fye v. Central Transportation, Inc*, 487 Pa. 137, 409 A.2d 2 (1979), and *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989) in support of its contention that the Act provides Schweitzer's exclusive remedy for her claims of assault and intentional infliction of emotional distress. Its reliance, however, is misplaced. In *Fye*, a school bus driver became pregnant and was ordered by her doctor to stop working until the child was born. When she was able to return to work she notified the company and was refused employment. She filed a complaint with the Commission and subsequently requested that the Commission close her case. She then filed a complaint based solely on unlawful sexual discrimination pursuant to the Human Relations Act in the court of

common pleas. Our Supreme Court held that the Commission divested the common pleas court of jurisdiction because the complaint was based solely upon a discrimination claim cognizable and remediable under the Act. *Fye* involved no independent common law tort claims.

Rockwell misrepresents the holding in *Clay v. Advanced Computer Applications, supra* in order to support its theory that the Human Relations Act's exclusivity provision precludes a complainant from pursuing common law claims involving alleged sexual harassment in the workplace against a former employer. In order to illustrate the true holding of *Clay*, we must discuss the procedural history of *Clay* in detail. In the trial court, the Clays alleged that their at-will employment with Advanced Computer Applications had been unjustly terminated because Mrs. Clay rebuffed sexual advances made by a management-level employee. The Clays filed an action in the common pleas court alleging wrongful discharge, breach of an implied contract of employment and intentional infliction of emotional distress.

The defendants filed preliminary objections which the court referred to collectively as motions to dismiss. The motions to dismiss were subsequently granted. In its opinion the trial court stated that it dismissed the Clays' claims because: 1) the court lacked subject matter jurisdiction over the wrongful discharge claims because the PHRA and the Civil Rights Act of 1964 provided the exclusive remedy for grievances arising from sexual discrimination in the workplace; 2) the Clays failed to state a cause of action for breach of contract and 3) the Clays failed to state a cause of action for intentional infliction of emotional distress.

The Clays appealed to this court in *Clay v. Advanced Computer Applications*, 370 Pa.Super. 497, 536 A.2d 1375 (1988). We affirmed the order of the trial court in part and reversed in part, holding that the trial court erred in determining that it did not have jurisdiction over the Clays' wrongful discharge claims, and that the trial court properly dismissed the Clays' claims for breach of contract and

intentional infliction of emotional distress. In addressing the Clays' claim for emotional distress we, as did the trial court, concluded that the Clays failed to allege facts supporting a cause of action for intentional infliction of emotional distress. We did not hold that the claim for emotional distress was not cognizable in the common pleas court. We wrote as follows:

[t]aking all well pleaded facts in the complaint as true, we certainly agree that the conduct attributed to Mr. Gruenwald and Mr. Baus [the defendants] is obnoxious and reprehensible. It might even have supported a complaint before the Pennsylvania Human Relations Commission. (Footnote omitted). It does not, however, amount to intentional infliction of emotional distress.

*Clay*, 370 Pa.Super. at 513–514, 536 A.2d at 1384 (1988). Further, we held that:

[w]e do not underestimate the seriousness of sexual harassment in the workplace. Nor do we exclude the possibility that, under different circumstances, sexual harassment could support a claim for intentional infliction of emotional distress.

*Clay*, 370 Pa.Super. at 515, 536 A.2d at 1385. Thus, we did not determine that the Human Relations Act barred an individual's common law tort action.

The defendants appealed to our Supreme Court, *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989). The defendants appealed our upholding of the viability of the wrongful discharge claim against them. That portion of our decision which affirmed the trial court's dismissal of the intentional infliction of emotional distress claim was not appealed to the Supreme Court. *Clay*, 522 Pa. at 88 n. 1, 559 A.2d at 918 n. 1. This issue, therefore, was never before the Supreme Court. The Supreme Court held, only with regard to the wrongful discharge claim, that the Commission had exclusive jurisdiction because the Clays' claim for wrongful discharge was an unlawful discriminatory practice pursuant to § 955(a) of the Act and thus remediable only by the Act. Our order was only

"reversed in part" by the Supreme Court. *Clay,* 522 Pa. at 95, 559 A.2d at 921. Our Supreme Court never held, as Rockwell would have us believe, that a complainant's claim for intentional infliction of emotional distress is generally barred by the Human Relations Act.

We recognize that in the recent case of *Kuney v. PMA Insurance Company,* 525 Pa. 171, 578 A.2d 1285 (1990), our supreme court held that an individual's tort claim against an insurance company for the wrongful delay of his compensation benefits is ultimately based upon an injury compensable under the Workmen's Compensation Act and thus limits the individual to the remedies provided within the framework of the act. *Kuney,* however, is readily distinguishable from the present case. In *Kuney,* a Workmen's Compensation hearing had already taken place and Kuney had been granted benefits. The court held that Kuney's claim that the insurance company wrongfully delayed the benefits awarded him following the Workmen's Compensation adjudication was "clearly a matter pertaining to a worker's compensation claim and must therefore be adjudicated within the framework of the statute...." *Kuney, supra.* Schweitzer's tort claims are procedurally and functionally independent of her sexual discrimination claims. Thus, they need not be adjudicated within the framework of the Human Relations Act.

▮ Common law rights existing before a statute is passed continue to exist once the statute is enacted. *See Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427 (1986). Nothing in the language of the Act itself or in the expressed legislative intent shows that the Legislature intended to extinguish common law rights. The trial court improperly concluded that Schweitzer's claims against Rockwell for assault and intentional infliction of emotional distress were barred by the Act. The trial court did not address the issue of whether Schweitzer had alleged facts sufficient to support a claim for emotional distress and we do not make this determination ourselves.

■ Last, the Workmen's Compensation Act does not bar Schweitzer's claim. If it is determined that an injury to an employee is "caused by an act of a third person intended to injure the employe because of reasons personal to him and not directed against him as an employee or because of his employment," 77 P.S. § 411(1), liability for the injury is not covered by 77 P.S. § 481, the exclusive remedy provision of the Workmen's Compensation Act. *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980).

■ In *Mike*, Hopewell Township Deputy Constables physically assaulted a Borough of Aliquippa police officer. The issue before us was whether Mike's injuries were exclusively compensable under the Workmen's Compensation Act. We held that because Mike's injuries were caused by an act of a third person intended to injure because of reasons personal to him and not directed against him as an employee or because of his employment, Mike's injuries were not covered by the Workmen's Compensation Act. The Mike court did not exclude "fellow employees" from the definition of a third person; the court addressed the possibility that an employee could be a third person:

> Normally, when an employee is injured in an attack by a fellow employee, there is a rebuttable presumption that the claimant is covered by the Act and the one claiming otherwise bears the burden of showing an intention to injure owing to reasons personal to the assailant. *O'Rourke v. O'Rourke*, 278 Pa. 52, 122 A. 172 (1923); *McBride v. Hershey Chocolate Corp.* 200 Pa.Super. 347, 188 A.2d 775 (1983); *U.S. Steel Corp. v. Workmen's Compensation App. Bd.*, 10 Pa.Commw. 247, 309 A.2d 842 (1973).

*Mike*, 279 Pa.Super. 382, 388, 421 A.2d 251, 254 (1980). In the present case, the alleged emotional distress arose from harassment personal in nature and not part of the proper employer/employee relationship. Therefore, nothing in *Mike* precludes the conclusion we reach in this case, that Schweitzer is free to bring her claims in the common pleas

court against Rockwell for the assault and intentional infliction of emotional distress inflicted by Barson.

We reject the position that the cases of *Barber v. Pittsburgh Corning Corp.*, 521 Pa. 29, 555 A.2d 766 (1989) and *Poyser v. Newman & Company*, 514 Pa. 32, 522 A.2d 548 (1987) control the resolution of this issue. *Barber* interprets the Occupational Disease Act, not the Workmen's Compensation Act. The Occupational Disease Act does not contain a third person/fellow employee exception, as does the Workmen's Compensation Act. *Poyser* involves an action against an employer for injury caused by the deliberate derelictions of the employer. No third person/fellow employee is involved in *Poyser*. Thus, neither of these cases are controlling.

We conclude that the exclusivity provision of the Workmen's Compensation Act is inapplicable to Schweitzer's claim for injuries arising from Barson's intentional actions. We neither consider nor decide whether Schweitzer will be successful against Rockwell in the court of common pleas but only that the Workmen's Compensation Act does not bar her tort claims.

Because we conclude that Schweitzer has not exhausted her administrative remedies, we affirm the trial court's grant of summary judgment in favor of Rockwell on the sexual discrimination claim. However, because her claims against Rockwell for assault and intentional infliction of emotional distress are not covered by the Pennsylvania Human Relations Act or the Workmen's Compensation Act, we reverse the trial court's grant of summary judgment in favor of Rockwell as to these claims.

Judgment affirmed in part, reversed in part. Case remanded for further proceedings consistent with the views expressed herein. Jurisdiction relinquished.

DEL SOLE, J., files a concurring and dissenting opinion.

DEL SOLE, Judge, concurring and dissenting.

I join that portion of the Majority Opinion that affirms the Trial Court's grant of Summary Judgment against Appellant on her claims of employment discrimination for failure to exhaust the administrative remedies provided by the Pennsylvania Human Relations Act, 43 P.S. §§ 951–962.2. However I must dissent from its conclusion that the plaintiff can proceeded with her common law tort claims of intentional infliction of emotional distress and assault.

I conclude that these claims are barred by the Workmen's Compensation Act, 77 P.S. § 1, *et seq.,* as interpreted by the Pennsylvania Supreme Court. The Majority reaches its result by relying on this court's decision in *Mike v. Borough of Aliquippa,* 279 Pa.Super. 382, 421 A.2d 251 (1980). Unfortunately, this case does not apply to the facts before us. There, the employee was permitted to recover from his employer in a tort action because his injuries were inflicted by third parties, not fellow employees. This case does not apply to situations like those present where the intentional injury is inflicted by a fellow employee.

In *Barber v. Pittsburgh Corning Corp.* 521 Pa. 29, 555 A.2d 766 (1989) the Supreme Court stated:

In this Court's decision in *Poyser, supra, [Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 522 A.2d. 548 (1987) ] we expressly held under ... provisions of the WCA that there was no intentional tort exception to the exclusivity provisions of the WCA. That decision ... [held that the WCA] ... preserved no common law cause of action for intentionally inflicted harm.

521 Pa. at 37, 555 A.2d at 770.

The Court went on to state that it has never recognized such an exception to the WCA. See also *Barber v. Pittsburgh Corning Corp.,* 365 Pa.Super. 247, 529 A.2d 491 (1987) (Del Sole, J. Dissenting). It is my belief that the Supreme Court of Pennsylvania has effectively disallowed the type of action that the plaintiff seeks to pursue by its

interpretations of the WCA and for this reason, I dissent and would affirm the decision of the trial court.